FEDERAL AUTO BODY WORKS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; EDWARD AND BARBARA VOCCOLA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Federal Auto Body Works, Inc. v. Commissioner
Docket Nos. 8640-80, 8641-80
United States Tax Court
T.C. Memo 1990-303; 1990 Tax Ct. Memo LEXIS 321; 59 T.C.M. (CCH) 910; T.C.M. (RIA) 90303; June 18, 1990, Filed *321 Decisions will be entered under Rule 155. Andrew A. Bucci, for the petitioners. Christine Colley, and Randall Andreozzi, for the respondent. SHIELDS, Judge. SHIELDS
MEMORANDUM FINDINGS OF *322 FACT AND OPINION In statutory notices dated April 9, 1980, respondent determined in these consolidated cases deficiencies in and additions to the Federal income tax of petitioners as follows: Additions to Tax
Year
Deficiencies
Section 6653(b) [1]
Federal Auto Body, Inc. (docket No. 8640-80)
1973
$ 40,545.51
$ 27,782.61
1974
18,233.74
9,116.87
Edward and Barbara Voccola (docket No. 8641-80)
1973
$ 47,412.97
$ 23,706.49
1974
16,399.71
8,199.86
After concessions the issues are: (1) whether petitioners Federal Auto Body, Inc. (Federal Auto) and Edward Voccola are liable for additions to tax for fraud under section 6653(b) (respondent has conceded that Barbara Voccola is not liable for such addition to tax); (2) whether Federal *323 Auto and Edward Voccola received and failed to report gross income in the amounts of $ 92,369.04 in 1973 and $ 36,298.68 in 1974; and (3) whether the assessment of respondent's determinations is barred by the statute of limitations. FINDINGS OF FACT During 1973 and 1974 and at the time its petition in docket No. 8640-80 was filed, Federal Auto had its principal office and place of business in Providence, Rhode Island. For the calendar years 1973 and 1974 it filed corporate income tax returns using the cash method of accounting. The returns were filed on July 3, 1974, and March 19, 1975, respectively, with the Internal Revenue Service Center, Andover, Massachusetts. Edward and Barbara Voccola resided in Cranston, Rhode Island, at the time they filed their petition in docket No. 8641-80. Using the cash method of accounting, they filed timely joint income tax returns for 1973 and 1974 with the Andover Service Center. Federal Auto was incorporated in 1953 by Edward Voccola and his brothers, John and Robert Voccola. Its principal source of income at all relevant times was from the repair, towing, and storage of automobiles. A substantial portion of its receipts was represented *324 by checks from various insurance companies. From its incorporation in 1953 through 1974, Edward Voccola was an officer of the corporation and was primarily responsible for its day-to-day business activities. During the same period his brothers, John and Robert, were also officers of the corporation; and the brothers as well as other members of all three families were employed by the corporation from time to time. The three brothers were also the only stockholders and principal officers of Jere Realty Company, Inc. (Jere Realty Company). In 1976, John Petrella, one of respondent's revenue agents, was assigned the 1973 and 1974 returns of Federal Auto for audit. The audit was commenced in the office of Stephen Ursillo, the corporation's certified public accountant, where Mr. Petrella examined the records used by the accountant in the preparation of the returns. The records consisted of a cash receipts journal, a disbursements journal, bank statements, cancelled checks, payroll records, and trial balances plus other workpapers prepared by the accountant. The agent's initial examination revealed that the returns of Federal Auto for 1973 and 1974 agreed with the corporate records. *325 However, other information available to the agent indicated that certain receipts of Federal Auto may have been omitted from the records as well as the returns of Federal Auto. In an attempt to verify the receipts as reflected by the corporate records, Mr. Petrella canvassed the companies which had done business with Federal Auto during 1973 and 1974. The agent's canvass for 1973 revealed 71 checks which had been cashed bearing a last endorsement for Edward Voccola or some other member of the Voccola family. Federal Auto was the only payee on 19 of the checks cashed in 1973 and a co-payee with an insurance claimant on 22. The other 30 checks cashed in 1973 were made payable to a claimant-payee alone but bore a Voccola endorsement. The 71 checks totaling $ 113,493.85 were not included in the records of Federal Auto or in its return for 1973. On 12 of the 71 checks, Edward Voccola was the only endorser. On 25 he was a co-endorser with a claimant-payee. The agent's canvass of the companies doing business with Federal Auto during 1974 revealed 48 checks which had been cashed with a last endorsement for Edward Voccola or some other member of the Voccola family. Federal Auto was *326 the only payee on 22 of the cashed checks and a co-payee with an insurance claimant on 13. Ten of the cashed checks were made payable to a claimant alone but bore a Voccola endorsement. The 48 checks totaling $ 56,291.39 were not included in the records of Federal Auto or its return for 1974. On five of the checks Edward Voccola was the only endorser. On 13 checks he was a co-endorser with a claimant-payee. Fifty-two of the 71 checks cashed in 1973 and omitted from the return of Federal Auto were for claims made to insurance companies including Nationwide, Allstate, GEICO, USAA, Travelers, American General, Great American, Aetna, Maryland Casualty, and Amica. The other 19 checks represented payment to Federal Auto for repairing, towing, and storing automobiles for Auto Placement Center, East Providence, Rhode Island. Twenty-seven of the 48 checks cashed in 1974 and omitted from the return of Federal Auto were for claims made to insurance companies including Nationwide, GEICO, Travelers, Aetna, Allstate, Amica, Dairyland, and Metropolitan. The other 21 were for charges made by Federal Auto to Auto Placement Center. Of the 19 checks issued in 1973 by Auto Placement Center to *327 Federal Auto in payment for the repair, storage, and towing of automobiles only one in the amount of $ 15 bears an endorsement for Edward Voccola. Nine of the 1973 checks from Auto Placement Center were endorsed by John Voccola and nine by Robert Voccola. Of the 21 checks issued by Auto Placement Center to Federal Auto in 1974, only four in the total amount of $ 465 bear an endorsement for Edward Voccola. The other 17 checks were endorsed by John Voccola. In September of 1976 Mr. Petrella, respondent's revenue agent, gave Federal Auto's accountant a list of some of the checks omitted from the 1973 and 1974 returns. Upon failing to receive from the accountant a satisfactory explanation for the omitted checks the matter was referred to respondent's criminal investigation division where it was assigned to Special Agent Matthew Kelliher, who joined Mr. Petrella in the audit. At this time the audit included Federal Auto, Jere Realty Company, Edward Voccola, and John Voccola. At the request of Edward Voccola and John Voccola, respondent's agents met with them on November 18, 1976, to discuss the items which appeared to have been omitted from Federal Auto's gross receipts. During *328 this meeting Edward Voccola admitted that his signature appeared on the joint returns filed by him and his wife for the years 1973 and 1974. Edward Voccola also admitted that it was his signature which appeared as the only endorser on 12 of the omitted checks for 1973 and five of the omitted checks for 1974 and that his signature appeared as a co-endorser with a claimant-payee on each of 25 omitted checks in 1973 and 13 omitted checks in 1974. To explain the omission of the insurance checks bearing his endorsement from Federal Auto's receipts for 1973 and 1974, Edward Voccola stated during the meeting that frequently individual claimants would decide not to have Federal Auto perform the repair work for which an estimate had been submitted by Federal Auto and a check issued by an insurance company. Occasionally when this happened he stated that he would, as a courtesy to the claimant, endorse the check, have it cashed at the bank, and give the proceeds to the claimant. The record contains no explanation with respect to the omission of insurance checks bearing the purported endorsements of Voccolas other than Edward. A further canvass by respondent's agents of the claimant-payees *329 of the checks in dispute revealed that 14 claimant-payees in 1973 and 14 claimant-payees in 1974 did not have their repairs done by Federal Auto and instead received the proceeds of their checks in the total respective amounts of $ 21,024.71 and $ 19,454.62. With unexplained adjustments in favor of petitioners of $ 100.10 in 1973 and $ 538.09 in 1974, respondent determined that the taxable receipts omitted from Federal Auto's records and returns for 1973 and 1974 were as follows: 1973
1974
Total checks cashed
$ 113,493.85
$ 56,291.39
Less proceeds kept by payees
21,024.71
17,766.34
Sub-total
92,469.14
38,525.05
Less adjustment
100.10
538.09
Omitted Receipts
$  92,369.04
$ 37,986.96
At trial respondent stipulated that the omitted receipts for 1974 should be further adjusted downward by $ 1,688.28 to $ 36,298.68. In his notice of deficiency to petitioners, Edward Voccola and Barbara Voccola, respondent determined that the omitted receipts of Federal Auto for 1973 and 1974 constituted taxable distributions to Edward Voccola in the form of constructive dividends. Edward Voccola was born on January 11, 1929. He attended high school but dropped *330 out before graduating. Before 1953 he was in the Navy for about three years. In or about 1981 or 1982 he was convicted of insurance fraud and perjury in connection with his activities at Federal Auto during 1973 and 1974. The official records of the Division of Vital Statistics, Rhode Island State Department of Health, indicate that Edward Voccola was married to Barbara Ann Caputo on May 21, 1953. To obtain his license to marry, Edward Voccola filed with the City Registrar of Providence on May 6, 1953, a Declaration of Intention of Marriage which bears what purports to be his signature executed in the presence of a certain Myrtle D. Logan. On July 19, 1958, Edward Voccola permanently registered to vote in the State of Rhode Island. His permanent registration form bears what purports to be his signature executed in the presence of Registration Officer D. V. Bethune. The record contains a copy of a deed recorded in Book 545 at Page 576 of the records of the City of Cranston by which Edward Voccola conveyed certain real property located in Providence, Rhode Island, to Barbara Voccola on March 4, 1986, which deed purportedly bears the signature of Edward Voccola as acknowledged *331 before John B. Reilly, Notary Public. The record also contains a copy of a mortgage deed recorded in Book 439 at page 346 of the records of the City of Cranston by Edward and Barbara Voccola to Old Colony Co-Operative Bank which purportedly bears the signature of Edward Voccola as acknowledged on December 7, 1978, before Diane E. Hogan, Notary Public. The official records of the Rhode Island Secretary of State contain annual reports for Jere Realty Company for the years 1975, 1976, 1977, 1979, 1982, 1983, 1985, 1986, and 1987 which were purportedly signed by Edward Voccola as an officer of the corporation. The official records of the same office contain annual reports for Federal Auto for the years 1975, 1977, 1978, 1979, 1982, 1983, 1985, and 1986 which were purportedly signed by Edward Voccola as an officer of the corporation. In or about June of 1988 petitioners' counsel, Andrew A. Bucci, mailed to respondent's counsel a power of attorney dated March 31, 1988, which purportedly bears the signature of Edward Voccola executed before Rosario Badessa, Notary Public. On or about October 1, 1973, Joseph C. Lewis received a check in the amount of $ 543.42 from GEICO for repairs *332 made to his automobile by Federal Auto. He endorsed the check and gave it to Edward Voccola. The check was subsequently cashed. In addition to Mr. Lewis' endorsement it bears handwritten endorsements for Federal Auto and Edward Voccola. The check is not included in the records or the return of Federal Auto for 1973. In 1973 Ludovico Iadevaia's automobile was damaged in an accident for which he received a check from Nationwide in the amount of $ 827.50. The check was payable to him and Federal Auto where he had the automobile repaired. The check was subsequently cashed and is not included in the records or return of Federal Auto for 1973. In addition to Mr. Iadevaia's endorsement the check bears handwritten endorsements for Federal Auto and Edward Voccola. In 1972 Vasken Harootunian had an automobile accident in which his vehicle was damaged. He had it repaired at Federal Auto and received in February of 1973 a check from Travelers in the amount of $ 742.65. The check was payable to him and to Federal Auto. He endorsed the check and left it at Federal Auto. The check was subsequently cashed and was not included in the records or the return of Federal Auto for 1973. In *333 addition to Mr. Harootunian's endorsement the check bears handwritten endorsements for Federal Auto and Edward Voccola. At trial Edward Voccola testified that he could not have endorsed any of the disputed checks which bear his purported signature because he can neither read nor write. He also stated that he did not sign the Declaration of Intention of Marriage in 1953, the permanent registration form in 1958, the mortgage deed in 1978, the deed to his wife in 1986, any of the annual reports for Federal Auto or Jere Realty Company enumerated hereinbefore, or the power of attorney to his counsel in 1988. He claims that in all these instances some other party signed his name since he always followed the practice of having some unnamed individual present for such purpose. He also testified that during 1973 and 1974 his name was frequently signed to numerous documents at Federal Auto by any one of the 10 or 11 individuals who were working there from time to time. At trial, he signed his name in an obviously slow and deliberate manner. Shortly prior to trial he had also furnished respondent's counsel with 30 exemplars of his signature. However, in the opinion of an admitted handwriting *334 expert called by respondent, the 30 exemplars as well as the signature produced at trial by Edward Voccola were of no value for comparison purposes because they were deliberately distorted. But in the opinion of the expert at least 10 of the disputed checks including three of those identified by Edward Voccola as bearing his endorsements in the meeting with respondent's agents on November 18, 1976, as well as other documents bearing his signature such as the power of attorney to petitioners' counsel, and the annual reports of Federal Auto and Jere Realty Company, the voter registration form, the deed to Mrs. Voccola in 1986, and the mortgage deed to Old Colony Cooperative Bank, were signed by the same person. John Voccola testified at trial, as well as his wife Ida Voccola, and a number of other individuals who had dealt with Edward Voccola over the years, but none of them were asked about Edward Voccola's alleged inability to endorse checks or sign other documents. The record contains no evidence of any claim until shortly before the trial by Edward Voccola of his inability to endorse checks. The record contains no explanation for the absence of testimony by Barbara Voccola as *335 to Edward Voccola's ability or lack of ability to sign his name. The same is true with respect to the lack of such testimony by a number of other individuals such as his brothers, other employees of Federal Auto, and the four Notaries Public before whom he allegedly executed documents. Any one of these individuals should have been aware of such a handicap if it existed. OPINION (1) Fraud. In both of these cases the relevant returns were filed more than three years before respondent's deficiency notices were mailed to petitioners. Consequently, the usual three-year statute of limitations provided by section 6501(a) for the assessment of respondent's determinations had expired when the notices were mailed. Respondent, however, contends that he can assess the determinations at any time because the unlimited statute of limitations provided by section 6501(c)(1) [2] is applicable in both cases since the underpayments of tax by petitioners are attributable to fraud on the part of Federal Auto and Edward Voccola. It is apparent, therefore, that the primary issue in each case is whether fraud is present. If fraud is present, the assessment of respondent's determinations *336 is not barred. If fraud within the meaning of section 6501(c)(1) is not present, the assessment of the deficiencies in, and the additions to tax, determined by respondent is barred by the three-year statute of limitations provided by section 6501(a). In order to invoke the unlimited statute of limitations in section 6501(c)(1) respondent has the burden of proving by clear and convincing evidence that there is some underpayment of tax by petitioners in each taxable year; and that at least a part of the underpayment for each taxable year is attributable to fraud. , affg. ; *337 , affd. . Since Federal Auto is a corporation it can act only through its officers or other agents. We have found that from its incorporation in 1953 through 1974 Edward Voccola was an officer of the corporation and was primarily responsible for its day-to-day business activities. Consequently, any fraudulent act or intent on his part is imputable to Federal Auto. , affd. . Fraud within the meaning of section 6501(c)(1) consists of any act or conduct which is intended to conceal, mislead, or otherwise prevent the collection of taxes known to be owing. . Fraud is an issue of fact to be determined from the entire record. , affd. without published opinion . It is never presumed. . However, it may be proven by circumstantial evidence *338 because direct proof of a taxpayer's intent is rarely available. . The entire course of conduct of the taxpayer involved, or in case of a corporation its responsible officers or other agents, can be reviewed for indications of the requisite intention. ; From the record as a whole we are satisfied that respondent has established by clear and convincing evidence that there was an underpayment of the income taxes due from petitioners in each year which is attributable to the fraudulent acts of Edward Voccola individually and as an officer of Federal Auto. First, his claim at trial that he could not have endorsed any of the omitted checks because he is unable to read or write is not supported by the record. From the testimony of respondent's witness, who is admitted by petitioners to be a handwriting expert, we are convinced and so find that the signature, Edward Voccola, was placed by the same person on at least 10 of the disputed checks including three of which Edward Voccola admitted signing in *339 a meeting with respondent's agents on November 18, 1976. For the same reason we are also satisfied and so find that the signature, Edward Voccola, was placed by the same person on Edward Voccola's declaration of intention to marry in 1953, his permanent registration form in 1958, his deed to Barbara Voccola in 1986, the mortgage deed in 1978, and the nine annual reports filed with Rhode Island's Secretary of State for Jere Realty Company from 1975 through 1987 plus the eight annual reports filed with the same office for Federal Auto from 1975 through 1986. In the absence of some explanation of how he could manage to have the same individual available to sign his name to each of these 31 documents over the period from 1953 through 1988, we are unable to conclude that they were signed by anyone other than Edward Voccola. This conclusion is also supported by the fact that on their face it is stated that the two deeds were executed before different Notaries Public, that the declaration of intention to marry was executed in the presence of a named witness, and that the permanent registration form was executed before a named Registration Officer. The failure of Edward Voccola to produce *340 the testimony of any one of these parties as well as his wife, Barbara Voccola, his brothers, John and Robert, or any other relative or acquaintance of long standing, in support of his claim of illiteracy is even more support for our conclusion that Edward Voccola is not illiterate. The unexplained absence of such witnesses infers that if available their testimony would be contrary to his. , affd. . Secondly, at trial Edward Voccola actually signed his name at the direction of the Court, and in the presence of counsel for the parties. Admittedly as set forth in our findings the signature executed in Court was done slowly and laboriously which is consonant with the handwriting expert's conclusion that this signature as well as the exemplars previously furnished to respondent's counsel were deliberately distorted. Nevertheless the signature executed at trial is clearly legible and demonstrates beyond any doubt that Edward Voccola is able to sign his name. Thirdly, during the meeting on November 18, 1976, with respondent's agents, Edward Voccola admitted *341 that his signature appeared on some of the disputed checks, the joint returns for 1973 and 1974, on some of the annual reports for Federal Auto, and on the income tax returns of Federal Auto. In view of these admissions to the agents, it is apparent that either his statements to the agents or his testimony at trial about his inability to write his name is not truthful. The existence of false, implausible, or inconsistent explanations for questionable conduct is evidence of fraud. , affg. a Memorandum Opinion of this Court. Fourthly, Edward Voccola's statement to the agents that he placed his endorsement on some of the checks as an accommodation to claimant-payees who were otherwise unable to cash their checks but who did not have their automobiles repaired by Federal Auto was flatly contradicted by the payees on at least three of the checks who testified that Federal Auto did repair their cars and that the insurance checks were endorsed by them and turned over to Federal Auto in payment for the repairs. This too is further evidence of fraudulent intent since it is a false statement and an inconsistent *342 explanation of questionable conduct. Finally, Edward Voccola did not produce at trial or during respondent's audit any record of the proceeds received from the omitted checks. All of the foregoing clearly and convincingly establishes a pattern of consistent conduct by Edward Voccola during 1973 and 1974 to divert to himself receipts belonging to Federal Auto. Such a pattern is evidence of fraud. . Such diversions not only result in a fraudulent understatement of Federal Auto's taxable income but also constitute constructive dividends taxable to Edward Voccola under section 301(c). We conclude, therefore, that respondent has carried his burden of proof with respect to fraud in both cases. (2) Deficiencies. Since respondent has carried his burden of proof with regard to fraud by demonstrating clearly and convincingly that some understatement exists in each year in each case before us and that such understatements are attributable to the fraudulent acts of Edward Voccola individually and as the responsible *343 officer for Federal Auto, it is incumbent upon petitioners to demonstrate what errors if any exist in respondent's determinations of the deficiencies in tax. Sec. 7454(a); Rule 142(b); Petitioners first contention is that respondent has failed to establish that Edward Voccola was able to endorse any of the omitted checks because he could not read or write. Their second contention is that under no circumstances should he be accountable for any of the checks which do not bear what purports to be his signature. We have disposed of their first contention with our conclusion with respect to the fraud issue that from the record as a whole we are unable to find that Edward Voccola is unable to sign his name. With respect to their second contention petitioners overlook the fact that they have the burden of demonstrating that respondent's determination that Edward Voccola as the officer responsible for the day-to-day business affairs of Federal Auto was accountable for all of the omitted checks. Consequently, with one exception we find that they have failed to carry their burden of proving that respondent's determination is incorrect. *344 The one exception involves the omitted checks from Auto Placement Center. Only one of the 19 checks from Auto Placement in 1973 bears an endorsement for Edward Voccola. John Voccola endorsed nine of the other 18 and Robert Voccola endorsed nine. Only four of the 21 checks received from Auto Placement in 1974 were endorsed by Edward Voccola. The other 21 were endorsed by John Voccola. At trial John Voccola testified in a forthright and credible manner that all of the checks from Auto Placement were cashed and the proceeds used as petty cash by the office personnel at Federal Auto. We conclude, therefore, that respondent incorrectly determined that the Auto Placement checks were taxable to Edward Voccola.
(3) Statute of Limitations. Since the returns filed by Federal Auto and the returns filed by Edward and Barbara Voccola for 1973 and 1974 were fraudulent, the assessment of respondent's determinations as adjusted herein are not barred by the statute of limitations. Sec. 6501(c)(1). To reflect the foregoing and the concessions made by respondent Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 6501(c)(1) reads in pertinent part as follows: SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. * * * (c) EXCEPTIONS. -- (1) FALSE RETURN. -- In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.↩